**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| David Bishop v. Maximus Federal Services, Inc. | Lead Case No. 1:23-cv-01019 (DJN) |

**MEMORANDUM IN SUPPORT OF MOTION TO APPOINT
E. MICHELLE DRAKE AND NORMAN E. SIEGEL AS INTERIM CLASS COUNSEL
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g)**

Pursuant to Fed. R. Civ. P. 23(g) and this Court's September 6, 2023 Order, E. Michelle Drake of Berger Montague and Norman E. Siegel of Stueve Siegel Hanson LLP respectfully move for appointment as interim co-lead class counsel; for appointment of Kristi C. Kelly of Kelly Guzzo P.C. as liaison counsel, and for appointment of a steering committee as set forth below (the "Drake-Siegel Group"). The Drake-Siegel Group is a consensus slate supported by all plaintiffs in this consolidated action.

The Drake-Siegel Group is a diversified slate of committed lawyers that: (i) includes leadership from every major data breach case litigated to date, including *Equifax*, *T-Mobile*, *Capital One*, *Marriott*, *Quest*, *Office of Personnel Management*, *Home Depot*, *Anthem*, *Target*, and *Yahoo*; (ii) engaged Maximus's counsel and other plaintiffs' counsel to reach consensus on early case management issues; (iii) has a long history of working cooperatively among themselves and with defense counsel to expeditiously frame cases for litigation, and where possible, early resolution; and (iv) has a successful history of litigating class actions in the Eastern District of Virginia.

The Drake-Siegel Group proposes the following appointments:

<u>*Co-Lead and Interim Class Counsel*</u>:

(1) E. Michelle Drake, Berger Montague; and
(2) Norman E. Siegel, Stueve Siegel Hanson LLP

<u>*Liaison Counsel*</u>: Kristi C. Kelly, Kelly Guzzo PLC

<u>*Steering Committee*</u>:

(1) Mason A. Barney, Siri & Glimstad LLP
(2) Bart Cohen, Bailey & Glasser, LLP;
(3) Billy Howard, The Consumer Protection Firm;
(4) Gary Klinger, Milberg Coleman Bryson Phillips Grossman, PLLC;
(5) Corban Rhodes, DiCello Levitt; and
(6) John Yanchunis, Morgan & Morgan

The Drake-Siegel Group is the product of a "private ordering" process among several independent groups of lawyers that did not initially join in filing the same complaint, but came together because of their desire to assemble the team that is "best able to represent the interest of the class." Fed. R. Civ. P. 23(g)(2).

The slate also reflects the diversity of the Bar and the plaintiff class – from the standpoint of gender, age, geography, background, and experience. This mix of attorneys thus strives to meet the guidance from Duke Law's Bolch Judicial Institute:

> [In] appointing a leadership team, courts should be mindful of the benefits of diversity of all types. In particular, the strong repeat player dynamic that has historically existed reduces fresh outlooks and innovative ideas, and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued in the MDL. At the same time, leadership needs repeat players who understand the ropes. Thus a balanced team, with diversity of skills, expertise, prior casework and role, and demographics, should be sought.

BOLCH JUDICIAL INSTITUTE, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, at 37(2nd Ed.), available at https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf (the "Duke Standards").

This group came together "as a cohesive group that is committed to the team rather than individual play." *In re: Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591, 2015 WL 13679783, at *2 (D. Kan. Feb. 13, 2015). It is the right combination of talent, personalities, and data breach experience to prosecute this action most effectively in this Court. Moreover, to ensure the efficient prosecution of this case, the Drake-Siegel Group requests that the Court enter a case management order setting forth a time keeping and reporting protocol materially in the form attached as **Exhibit 1**.[1]

## APPLICABLE LAW

The appointment of interim co-lead class counsel is recommended early in the litigation, prior to class certification, to protect the interests of the putative class. *See Annotated Manual for Complex Litig.* (4th ed. 2004) (the "*Manual*"); *see also* Fed. R. Civ. P. 23(g)(2)(A) (providing for the designation of interim class counsel to act on behalf of a putative class before the determination of class certification).[2] A court may appoint interim class counsel before deciding whether the action may be certified as a class. *See* Fed. R. Civ. P. 23(g)(3); *see also Flowers v. Here To Serve Restaurants, Inc.*, 2016 WL 10567195, at *2 (N.D. Ga. Jan. 12, 2016). Although the Rule states the Court "may" appoint interim counsel, courts that have construed Rule 23(g)(3) have relied on the Advisory Committee Notes (the "Notes") accompanying the rule to hold that appointment of

---

[1] The protocol largely tracks the one used before Judge Trenga in *In re: Capital One Consumer Data Security Breach Litigation*, MDL No. 1:19md2915 (AJT/JFA).

[2] These cases have been tagged as potential related actions in MDL No. 3083, *In Re MOVEit Customer Data Security Breach Litigation.* The Motion for Centralization and Transfer in Massachusetts is set for hearing before the Judicial Panel on Multidistrict Litigation on September 28, 2023. Courts in this District routinely decline to stay cases during the pendency of an MDL, and plaintiffs here have opposed centralization. *See, e.g., Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518 (2018) (Lauck, J.).

interim class counsel is useful because it "clarifies responsibility for protecting the interests of the class during precertification activities." Further, the Notes contemplate "that in many cases the need to progress toward the certification determination may *require* designation of interim counsel." Fed. R. Civ. P. 23, Advisory Committee Notes (2003) (emphasis added).

Where more than one applicant seeks appointment,[3] "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). In making this determination, the court must consider (i) counsel's work in identifying or investigating potential claims, (ii) counsel's experience in handling class actions and the types of claims involved, (iii) counsel's knowledge of the applicable laws, and (iv) the resources counsel commits to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Drake-Siegel Group fully satisfies each of these factors.

## ARGUMENT

### I.     *Proposed Interim Class Counsel's Work in Identifying and Investigating Potential Claims*.

While no one factor under Federal Rule of Civil Procedure 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

Moore's Fed. Prac. § 23.120(3)(a) (3d. Ed. 2007).

---

[3] Given the substantial efforts made at achieving consensus, the Drake-Siegel Group does not anticipate that there will be additional applicants.

Here, the Drake-Siegel Group's work in identifying and investigating the claims in this case demonstrates that they have and will continue to fairly and adequately represent the proposed Class. For example, the Drake-Siegel Group has performed the following work in the early stages of the litigation:

a) Investigated potential legal claims arising from Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Plaintiffs' and Class Members' PII;

b) Analyzed reports and articles describing Defendant's challenged conduct;

c) Reviewed Defendant's websites;

d) Researched Defendant's corporate structures;

e) Researched relationships Defendant has with various entities;

f) Investigated the nature of the challenged conduct at issue here by interviewing several potential clients;

g) Investigated the adequacy of the individual Plaintiffs to represent the putative class;

h) Drafted and filed separate complaints in this action;

i) Communicated with one another regarding the most efficient manner to organize counsel; and

j) Begun drafting a consolidated amended complaint;

k) Coordinated with Defendant's counsel over procedural matters, including consolidation.

These efforts represent a high standard of professionalism, dedication, and thoroughness, which have been marshaled to identify, develop and demonstrate the claims alleged in the respective complaints. These measures are precisely the type of work that the Advisory Committee Notes state that the Court should consider in appointing interim class counsel. In particular, the

Notes contemplate that the appointment of interim class counsel may be necessary to conduct discovery prior to a determination to grant or deny class certification, inasmuch as "some discovery is often necessary for that determination." *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003). The Notes further state, "[o]rdinarily such work is handled by the lawyer who filed the action." *Id*. Here, a significant amount of discovery and related motion practice is expected to take place prior to class certification. *See id.* (noting that interim class counsel may be necessary to "make or respond to motions before certification"). Moreover, the class certification motion has not yet been scheduled and discovery will be necessary before a class certification motion is filed. Discovery in this matter may be complicated and require conferrals and likely motions prior to class certification. Proposed Interim Class Counsel's thorough investigation into the claims will enable them to more than adequately handle this discovery and related motion practice.

## II.  *Counsel's Experience in Handling Class Actions and the Types of Claims Involved*.

The second factor the Court must consider is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). Here, Proposed Interim Class Counsel have substantial experience handling consumer class actions involving data privacy issues as well as other complex litigation. For example, the Drake-Siegel Group includes lawyers who served in leadership capacities in nearly every large data breach case to date, as set forth in the brief biographies below and attached firm resumes. These cases have been litigated in this Court and across the country against defendants large and small. Many have been resolved only after extensive discovery and motion practice, providing the Drake-Siegel Group a great depth of knowledge and experience in data breach cases that will be brought to bear for the benefit of the class here.

## <u>Proposed Co-Lead and Interim Class Counsel[4]</u>

**E. Michelle Drake, Berger Montague (Minneapolis, MN)**

Ms. Drake is an Executive Shareholder at Berger Montague, the founder and Managing Partner of Berger Montague's Minneapolis office, and serves as Berger Montague's Co-Chair of the firm's (1) Technology, Privacy, and Data Breach Department; and (2) Consumer Protection Department. A graduate of Harvard College (*magna cum laude*), Oxford University, and Harvard Law School (*cum laude*), Ms. Drake possesses a rare combination of elite academic pedigree, real-world litigation skill, and a proven devotion to advancing the interests of the underdog. Over her twenty-two year career, Ms. Drake has successfully served as lead counsel (or other leadership roles) representing consumers in *dozens* of consumer privacy class actions that resulted in class recoveries valued well into the *billions* of dollars. Many of these actions were in this Court. Actions where Ms. Drake served in a leadership role include but are not limited to the following:

(1) *In re: Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522 (D. Minn., Hon. Paul Magnusson). Ms. Drake served as liaison counsel and achieved a settlement on behalf of a class of approximately 100 million consumers upheld by the Eighth Circuit.

(2) *In re: MGM Resorts International Data Breach Litig.*, No. 2:20-cv-00376 (D. Nev., Hon. Gloria M. Navarro). Ms. Drake serves as co-lead counsel in this data breach matter affecting an estimated 200 million consumers.

(3) *Thomas v. Equifax Info. Servs., LLC*, No. 3:18-cv-00684 (E.D. Va., Hon. M. Hannah Lauck). Ms. Drake served as co-lead counsel in this consumer privacy and protection matter, achieving monetary and injunctive relief valued in the billions of dollars on behalf of a class of approximately 69 million consumers.

(4) *Clark v. Trans Union, LLC*, No. 3:15-cv-00391 (E.D. Va., Hon. M. Hannah Lauck). Ms. Drake served as co-lead counsel in this consumer privacy and protection matter, achieving monetary and injunctive relief valued in the billions of dollars on behalf of a class of approximately 81 million consumers.

(5) *In re: American Medical Collection Agency, Inc., Customer Data Security Breach Litig.*,

---

[4] The law firm resumes from each of the attorneys proposed for a leadership position are attached hereto as **Exhibit 2**.

No. 2:19-md-02904 (D.N.J., Hon. Madeline Cox Arleo). Ms. Drake serves on the Steering Committee in this data breach matter affecting an estimated 11.5 million consumers.

(6) *Clark v. Experian Info. Sols., Inc*., No. 3:16-cv- 00032 (E.D. Va., Hon. M. Hannah Lauck). Ms. Drake served as co-lead counsel in this consumer privacy and protection matter, achieving monetary and injunctive relief valued in the billions of dollars on behalf of a class of approximately 50 million consumers.

(7) *In re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litig.*, No. 3:19-md-02913 (N.D. Cal., Hon. William H. Orrick) ("*Juul*"). Ms. Drake served on the Plaintiffs' Steering Committee and chaired the consumer class action committee, achieving an overall MDL settlement of approximately $1.2 billion, and a consumer class settlement of $255 million.

(8) *In re: TransUnion Rental Screening Solutions, Inc. FCRA Litig.*, No. 1:20-md-02933 (N.D. Ga., Hon. J.P. Boulee) ("*TURSS*"). Ms. Drake served as lead counsel in this consolidated MDL, achieving an $11 million resolution on behalf of hundreds of thousands of individual consumers, final settlement approval pending.

(9) *In re GEICO Customer Data Breach Litig.*, No. 21-CV-2210 (E.D.N.Y., Hon. Kiyo A. Matsumoto). Ms. Drake was appointed co-lead counsel in privacy class action alleging GEICO posted millions of consumers' drivers' license numbers on its website in violation of the federal Drivers' Privacy Protection Act.

(10) *Turner, et al. v. ZestFinance, Inc., et al.*, No. 3:19-CV-00293 (E.D. Va., Hon. David J. Novak). Ms. Drake served as co-lead counsel in this illegal lending case which settlement of established common fund for class members of $18.5 million and cancelled over $170 million in debt for class members.

(11) *Williams v. Big Picture Loans, et al.*, No. 3:17-cv-00461 (E.D. Va., Hon. Robert E. Payne), Ms. Drake served as co-lead counsel in illegal lending case which resulted in $43 million judgment on summary judgment.

(12) *Hill-Green v. Experian Info. Sols., Inc.*, No. 3:19-cv-00708 (E.D. Va., Hon. M. Hannah Lauck). Ms. Drake was co-lead class counsel in this FCRA consumer class action that settled, both for an injunctive relief settlement class, as well as a monetary relief settlement class for which a fund of $22.45 million was established.

Ms. Drake's colleagues at Berger Montague have also held leadership roles in some of the earliest, precedent-setting data breach class actions including but not limited to:

(1) *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*, No. 4:09-md-02046 (S.D. Tex., Hon. Lee H. Rosenthal) (Berger Montague was appointed to Plaintiff's Steering Committee in class action for data breach involving 100 million credit and debit card numbers. The case settled in 2011 for a cash fund to reimburse out-of-

pocket costs, and injunctive relief);

(2) *In re: Experian Data Breach Litig.*, No. 15-cv-01592 (C.D. Cal., Hon. Josephine L. Staton) (Berger Montague was appointed to the Plaintiff's Steering Committee in this class action for a data breach involving 15 million Social Security numbers and related personal information from a Big-Three credit reporting agency. The case settled in 2019 for benefits valued at over $170 million);

(3) *In re TJX Cos. Retail Security Breach Litig.*, No. 07-10162 (D. Mass., Hon. William G. Young) (Berger Montague was appointed co-lead counsel in a data breach that impacted 45 million individuals. A settlement was reached valued at over $200 million, the terms of which became the template for most subsequent data breach settlements. In approving the settlement, former Chief Judge William Young praised the result as an "excellent settlement" containing "innovative" and "groundbreaking" elements).

Ms. Drake is a demonstrated leader in both the bar and her community, and devotes her time outside the courtroom to advancing consumers' interests. She sits on the Executive Committee of the Board of Public Justice where she chairs the Class Action Preservation Project Committee, and also serves on the Board of the Southern Center for Human Rights. Ms. Drake is a frequent national speaker on issues related to privacy and Article III standing. She has helped pave the way for other female leaders, and was named a 2022 as an Elite Woman of the Plaintiff's Bar by the National Law Journal. Ms. Drake's unique personal attributes go to the very heart of Rule 23(g)(2)'s guidance that "the court must appoint the applicant best able to represent the interests of the class." A competitive rower, Ms. Drake prides herself on being a team player and on her strong work ethic. Her strength is her ability to "get in the boat and row." For these reasons, Ms. Drake is both respected and liked by her peers.

**Norman E. Siegel, Stueve Siegel Hanson LLP (Kansas City, MO)**

Norman Siegel is a founding member of Stueve Siegel Hanson LLP. He has over 30 years' experience litigating complex commercial cases and class actions. As detailed on the attached resume, over the last decade Mr. Siegel has led more than 20 data breach class actions and served

as lead counsel in the three largest settlements ever achieved in data breach class actions against Equifax ($1.5 billion), T-Mobile ($500 million), and Capital One ($190 million). He is currently court-appointed co-lead counsel in several other large data breach cases including cases against Quest Diagnostics and Flagstar Bank, and has resolved a dozen other data breach cases in federal courts around the country. As part of these leadership roles, Mr. Siegel regularly leads teams of lawyers from other firms dedicated to "the just, speedy, and inexpensive determination" of cases (see Fed. R. Civ. P. 1), and is he is supported by a diverse team of lawyers at Stueve Siegel Hanson dedicated to the data breach field.

This experience will serve the class and the Court here in several respects. First, Mr. Siegel is intimately familiar with the legal issues that are likely to be at the forefront of this litigation. Stueve Siegel's legal work in this field includes achieving groundbreaking opinions at the trial and appellate court level that have helped develop the law in this emerging area. Examples include Mr. Siegel's work in securing favorable motion to dismiss orders in the *Target* data breach litigation, which served as the foundation for orders in subsequent data breach litigation including *Home Depot*, *Equifax,* and *Marriott.* In the recently settled *Capital One* case pending before The Hon. Anthony Trenga in this District, Mr. Siegel argued in favor of class certification premised on unique damages theories supported with expert opinions that had never been presented in a prior data breach case. The case settled only after Plaintiffs completed fact and expert discovery, briefed and argued motions for class certification and summary judgment, and fended off numerous other collateral attacks on Plaintiffs' claims. In approving the settlement late last year, Judge Trenga remarked: "Class Counsel were carefully selected for their skill and experience in a process that featured more than three dozen applications for class leadership. The performance of counsel and

the strong result for class members demonstrates Class Counsel's skill and efficiency and validates the Court's selection." *In re: Capital One Consumer Data Sec. Breach Litig.*, 2022 WL 17176495 at *2 (E.D. Va., November 17, 2022) (internal citations omitted).

On the appellate level, Mr. Siegel argued the key data breach standing case in the Fourth Circuit, *Hutton v. National Board of Examiners in Optometry*, 892 F.3d 613 (4th Cir. 2018), which resulted in an opinion reversing the district court's dismissal of the case for lack of Article III standing. And recently, Stueve Siegel prevailed in another precedent-setting appeal in the Third Circuit reversing dismissal of data breach class action for lack of Article III standing to sue and clarifying the contours of "injury" based on the threat of future harm. *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022).

This substantive experience in the data breach field will benefit the class in this case as it will help narrow the issues before the Court and promote arguments that have the best opportunities for success. Additionally, Stueve Siegel's experience has permitted the firm to work with many of the leading experts in this field, including developing new experts and damages theories that have expanded potential avenues of recovery for data breach victims. Moreover, through Mr. Siegel's leadership in designing, negotiating, and administering other large-scale data breach settlements, he has developed an intimate understanding of (1) litigation goals of data breach victims, including recovery of cash relief for time and effort spent responding to a breach; (2) the most impactful products available to help reduce the risk of future harm; (3) working with experts to develop meaningful injunctive relief that is narrowly tailored to the facts of each case to prevent reoccurrence of a breach; and (4) access to important data such as settlement claims rates for different forms of relief that provides meaningful insight on how to approach negotiations.

Of course, not all cases settle, and Stueve Siegel Hanson is one of the few firms in the country to have tried multiple class actions to verdict over the last several years. For example, Mr. Siegel was the lead trial lawyer in in a class action tried to a jury resulting in a $34 million verdict against State Farm, which led to a nationwide settlement for an additional $325 million. *See Vogt v. State Farm Life Ins. Co.,* No. 16-4170-cv-NKL. In short, Mr. Siegel's experience as a seasoned trial lawyer, coupled with his substantive experience litigating the most significant data breach cases brought to date, make him well suited to serve the parties and the Court as co-lead counsel in this case.

### Liaison Counsel

**Kristi C. Kelly, Kelly Guzzo PLC (Richmond, VA)**

Kristi C. Kelly is a name familiar to this Court. Over the past fifteen years, Ms. Kelly has represented consumers in more than 600 cases filed in the Rocket Docket, including serving as lead counsel in dozens of consumer class actions that have resulted in the return of more than a billion dollars to consumers.[5] In these cases, this Court has repeatedly recognized Ms. Kelly and her firm's ability, experience, and success in handling complex class actions. For example, when

---

[5] *See, e.g.*, *Hengle v. Asner*, No. 3:19-cv-250, ECF No. 230 (E.D. Va. Oct. 25, 2022) (granting final approval of a nationwide class settlement requiring the repayment of $39 million by several non-tribal individuals, as well as the cancellation of more than $450 million dollars of loans by the tribal lending entities); *Gibbs v. TCV V, L.P.*, No. 3:19-cv-789, ECF No. 95 (E.D. Va. Mar. 29, 2021) (Lauck, J.) (granting final approval of a class settlement providing $50 million in cash and $380 million in debt relief to borrowers); *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495, ECF No. 141 (E.D. Va. Dec. 13, 2019) (granting final approval of $60 million settlement and more than $380 million in debt relief to consumers); *Turner v. ZestFinance, Inc.*, No. 3:19-cv-293, ECF No. 114 (E.D. Va. July 9, 2020) (Novak, J.) (granting final approval of a class settlement providing $18.5 million in cash and $170 million in debt relief to borrowers); *Galloway v. Williams*, No. 3:19-cv-470, ECF No. 115 (E.D. Va. Dec. 18, 2020) (Payne, J.) (approving settlement providing $8.7 million in cash and over $100 million in debt relief for over 300,000 consumers).

recently approving a class action settlement, Judge Novak commented: "I frankly know all too well that class counsel was well known as experts in complex consumer litigation. I know that both in my capacity as a district court judge and as a magistrate judge before when I had to settle many of these cases. There's no question about class counsel being qualified, experienced, and adequate. Frankly, that word is insufficient." *Hengle v. Asner*, No. 3:19-cv-250-DJN, Final Fairness Hr'g Trans. at 9:13–19 (E.D. Va. Oct. 21, 2022). Similarly, Judge Lauck commented that Ms. Kelly and her firm had "developed a level of expertise that I think is unsurpassed in the country" in certain consumer protection matters, and that it was "a privilege to have such experienced lawyers attack an issue[.]" *Gibbs v. Stinson*, No. 3:18-cv-676, Final Fairness Hr'g Trans. at 25:19–25 (E.D. Va. Aug. 16, 2022).

In addition to her experience and success in complex class actions, Ms. Kelly is a known leader in the legal community. For example, the Virginia Lawyers Weekly selected Ms. Kelly as a "Leader in the Law" in its class of 2014 and as a member of its Influential Women in the Law class of 2019. She has been consistently asked to teach CLE programs in the areas of consumer law and class actions, including for national organizations focused on consumer advocacy like the National Consumer Law Center ("NCLC") and the National Association of Consumer Advocates ("NACA"). Ms. Kelly was also asked to participate in a workshop on accuracy in consumer credit reporting by the Federal Trade Commission and the Consumer Financial Protection Bureau. She currently serves on the Board of Directors for the Legal Aid Justice Center, the Virginia Poverty Law Center, and NACA. Additionally, she is a member of the Partners' Council for NCLC. Ms. Kelly has also been appointed to the merit selection panel for the appointment of United States

Magistrate Judges in the Eastern District of Virginia, for both the Richmond and Alexandria Divisions.

Ms. Kelly is also known for her consensus-based approach to litigation, making her a perfect fit for liaison counsel. Despite the zealous and often contentious nature of class litigation, Ms. Kelly and her firm pride themselves on their ability to work cooperatively with others. As this Court noted in other class action involving Ms. Kelly: "I wish that more would settle as quickly and as sensibly and as economically as you-all have settled this. . . . We're tied up with lots of class actions, lots of squabbling, and it's refreshing to see one resolved so promptly." *Conley v. First Tenn. Bank*, No. 1:10-cv-1247, Final Fairness Hr'g Trans. at 10 (E.D. Va.).

Given her extensive experience in consumer class actions, as well as with this Court's Rules, customs, and expectations (including regarding professional courtesy and civility), Ms. Kelly should be appointed as liaison counsel.

### Plaintiffs' Steering Committee

**Mason A. Barney, Siri & Glimstad LLP (New York, NY)**

Mr. Barney is a partner at Siri & Glimstad with over seventeen (17) years of experience in complex litigation. Mr. Barney was recently involved in a class action alleging violations of the Telephone Consumer Protection Act ("TCPA") which resulted in a settlement of $25 million (plus free satellite radio service) to a potential class of over 14 million customers (*Buchanan v. Sirius XM Radio, Inc.*, Case No. 3:17-cv-00728 (N.D. Tex.)). Mr. Barney was also trial co-counsel for plaintiffs in an ERISA matter filed as a class action involving breaches of fiduciary duty related to the management and termination of an ESOP, which settled after the beginning of trial for $1,080,000 for the Class (*Kindle v. Dejana*, No. 14-cv-06784 (E.D.N.Y.).

Mr. Barney has also served in leadership positions and as class counsel in numerous data breach and privacy matters, including having been recently appointed class counsel in *Carter, et al. v. Vivendi Ticketing US LLC d/b/a See Tickets*, No. 8:22-cv-01981 (C.D. Cal.), which has received preliminary approval for a settlement involving 437,310 class members and a $3 million non-reversionary settlement fund. He was also recently named as co-lead class counsel in *Gilleo, et al. v. California Pizza Kitchen, Inc.*, No. 8:2021-cv-01928-DOC-KES (C.D. Cal.), which settled with over $2 million going to the class members. Mr. Barney is also currently serving as interim class counsel in a number of other data breach actions, including *Pulliam et al. v. West Technology Group*, Case No. 8:23-cv-159 (D. Neb.), *Perez v. Carvin Wilson Software LLC*, Case No. cv-23-00792 (D. Ariz.), *Nulf v. Alvaria, Inc., et al.*, Case No. 1:23-cv-10999 (D. Mass.), *Rasmussen, et al. v. Uintah Basin Healthcare*, Case No. 2:23-cv-00322 (D. Ut.), *Skurauskis, et al. v. NationsBenefits Holdings, LLC, et al.*, Case No. 0:23-cv-60830 (S.D. Fl.), *In re Family Vision Data Security Incident Litig.*, Case No. 2023CP0401671 (S.C., County of Anderson), and *Scott, et al. v. Union Bank and Trust Co.*, Case No. 4:23-cv-03126 (D. Neb.) (the court commenting that "proposed interim co-lead counsel are experienced and qualified attorneys, and each has knowledge of the applicable law, experience in managing and prosecuting cases involving data security and privacy, notable successes against large corporate defendants, and resources they are willing to expend to litigate these cases").

**Bart Cohen, Bailey & Glasser, LLP (Philadelphia, PA)**

Mr. Cohen has represented plaintiffs in complex class action litigation for over 30 years. He is currently serving as one of two counsel representing a certified class in *Your Towne Builders, Inc. v. Manheim Township*, No. CI-14-07663 (Lancaster Cty., Pa. Ct. Com. Pl.), in which the court,

after a bench trial, overruled its court-appointed damages expert to award plaintiffs the full measure of their alleged damages of approximately $4.5 million, and injunctive relief worth tens of millions more.

After over 20 years representing plaintiffs primarily in antitrust class actions, his practice has recently focused on data breach litigation. He is serving as one of two co-lead counsel for a proposed class of over 2.2 million in *Nelson v. Connexin Software Inc.*, No. 2:22-CV-04676 (E.D. Pa.), in which the court lauded co-lead counsel's "ability to cooperate" with other counsel. *Id.*, 2023 WL 2721657, at *1 (E.D. Pa. Mar. 30, 2023). He is also serving as co-lead counsel for a proposed class of over 1.1 million in *In re Community Health Systems, Inc. Data Security Litigation*, No. 3:23-cv-00285 (M.D. Tenn.). He took primary responsibility for plaintiffs' briefing in *In re Morgan Stanley Data Security Litig.*, No. 1:20-cv-05914 (S.D.N.Y.), in which his former firm served as one of two co-lead counsel. The district court approved a $60 million settlement in that case. He likewise played a significant role in *In re Wawa, Inc. Data Security Litig.*, No. 2:19-cv-06019 (E.D. Pa.).

Mr. Cohen's firm, Bailey Glasser, LLP is comprised of over 80 attorneys. The 2022 Chambers USA Legal Guide honored Bailey Glasser as a "Band 1" firm for litigation in both Washington, D.C. and West Virginia, and lauded the firm for its "[i]mpressive team offering experience in both defense and plaintiff representation."

**Billy Howard, The Consumer Protection Firm (Tampa, FL)**

Mr. Howard serves as the Managing Partner of The Consumer Protection Firm. He has extensive experience litigating class action cases and complex litigation. Mr. Howard has been involved in and helped resolve some of the most important data breach cases in the country. For

example, he was appointed class counsel in *Ray Stoll and Heidi Imhof v. Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute*, No. 8:20-cv-01798 (M.D. Fla.), a Florida data breach case involving highly sensitive medical information including those of many children.

In addition to working on data breach cases, Mr. Howard has also advanced consumers' privacy interests by battling the robocalling industry. Mr. Howard has fought against robocallers for the last twenty years, and is regularly seen on the national news fighting for consumers. Mr. Howard has served as class counsel in cases including *Stuart Sawyer v. Intermex Wire Transfer, LLC*, No. 19-cv-22212 (S.D. Fla.) and *Clark v. Macy's Credit and Customer Services, Inc.*, No. 6:17-cv-00692 (M.D. Fla.).

Prior to founding his own firm, Mr. Howard was a managing partner at the largest injury law firm in the country where he started their consumer protection department 22 years ago. Mr. Howard became a nationally recognized expert on the Telephone Consumer Protection Act ("TCPA") and also had the opportunity to handle over 1,000 consumer protection cases involving the Florida Consumer Collection Practices Act ("FCCPA"), the Fair Debt Collection Practices Act ("FDCPA"), civil theft and intentional infliction of emotional distress.

Fighting for the little guy has always been a passion of Mr. Howard. He started his career as a Legislative Assistant in Washington, D.C. for Senator Bob Graham. While in law school, he was approved by the Florida Supreme Court as a Certified Legal Intern and prosecuted numerous cases for the West Palm Beach State Attorney's Office. Mr. Howard also clerked for the Honorable Edward Rodgers, the first African-American prosecutor and judge in Palm Beach County.

**Gary Klinger, Milberg Coleman Bryson Phillips Grossman, PLLC (Chicago, IL)**

Mr. Klinger is a Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been selected in September 2023 to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation.[6] He has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country.[7] Mr. Klinger and his firm are largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space.[8] Over just the past three years, Mr. Klinger settled on a classwide basis more than forty (40) class actions involving privacy violations, the majority of which are data breaches, in State and federal courts across the country as lead or co-lead counsel.[9] To his knowledge, no other attorney in the country has settled and won court

---

[6]    *See*    https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.

[7] *See In re Meta Browser Tracking Litig.*, Case No. 3:22-cv-05267-AMO (N.D. Cal.) (where Mr. Klinger is court-appointed co-lead counsel to tens of millions of consumers in a privacy class action against Facebook); *Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Mr. Klinger is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Mr. Klinger is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

[8] *See, e.g.*, *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

[9] Mr. Klinger has also successfully litigated privacy class actions through class certification. *See Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018)

approval of more data breach and data privacy class actions during this time period. Representative cases include:

- *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $68.5 million for 4 million consumers in a privacy class action);

- *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action); and

- *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger served as lead counsel in a data breach class action involving 6 million consumers and reached a settlement valued at $17 million).

In addition to his professional experience, Mr. Klinger is presently pursuing his Masters of Laws (LLM) in Data Privacy and Cybersecurity from the University of Southern California Gould School of Law. Mr. Klinger is also a Certified Information Privacy Professional (CIPP/US).

Mr. Klinger also has the full support of his law firm behind him. Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[10] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[11] The firm pioneered federal class action

---

(where Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members; the case ultimately settled for $6.5 million).

[10] *See, e.g.*, *In re Tyco Int'l Ltd., Sec. Litig.*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litig.*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[11] See https://milberg.com/precedent-setting-decisions/page/3/.

litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg has been described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."[12]

Milberg is one of the largest plaintiffs' class action firms in the United States (and abroad). The firm currently is involved in some of the largest and most complex class action cases pending in the country and is particularly active in the field of data breach and privacy litigation. The firm is comprised of more than one hundred-twenty attorneys who work from offices across the United States and in Portugal, the United Kingdom, the Netherlands, and Germany. Milberg attorneys come from diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent—from the standpoint of age, gender, experience, and geographic location.[13]

**Corban Rhodes, DiCello Levitt (New York, NY)**

Corban Rhodes is a partner at DiCello Levitt LLP, a firm that has built a stellar reputation in cybersecurity, privacy, and technology litigation—earning "Practice Group of the Year" from *Law360* an unprecedented three years in a row, and by the *National Law Journal* in 2020 and 2022. Corban is a seasoned litigator who has recovered more than a billion dollars for consumers in some of the country's largest and most historic cybersecurity, privacy, and securities fraud cases.

---

[12] Sam Roberts, *Melvyn Weiss, Lawyer Who Fought Corporate Fraud, Dies at 82*, N.Y. TIMES, (Feb. 5, 2018), https://www.nytimes.com/2018/02/05/obituaries/melvyn-weiss-lawyer-who-fought-corporate-fraud-dies-at-82.html.

[13] Duke Guidelines at 38, 45-46 ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

Corban played a significant role as a member of one of the co-lead counsel plaintiffs' firms in the *Facebook Biometric Information Privacy Litigation* matter, where he helped to secure a landmark $650 million settlement—one of the largest in data privacy history. The case against Facebook was one of the first cases asserting consumers' biometric privacy rights under Illinois law. *In re Facebook Biometric Information Privacy Litig.*, No. 15-cv-03747 (N.D. Cal.). In another matter against Facebook's parent Meta, Corban represents the State of New Mexico, helping to secure a significant victory ensuring that the state can litigate a case involving significant privacy violations in New Mexico. *State of New Mexico ex rel. Hector Balderas v. Facebook, Inc.*, No. D-101-CV-2021-00132 (Santa Fe Cty.). Corban has litigated a number of other cases involving negligence or malfeasance leading to data breaches, assisting teams in reaching settlements in some of the largest data breaches. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK (N.D. Cal. 2020).

With Corban's additional expertise in securities fraud litigation, he helps data breach teams navigate complex corporate filings, SEC disclosures, and earnings call reports, obtaining important and revealing executive deposition testimony.

Corban has been recognized by *Law360* as a Rising Star and one of five attorneys on its Top Attorneys Under 40 for Consumer Protection. He was also named by *Benchmark Litigation* as a Future Star and on its New York 40 Under 40 list and by *Super Lawyers* as a New York Rising Star, and he received a Thurgood Marshall Award for his *pro bono* representation of a death row inmate appealing from capital punishment. He is an active member of the Sedona Conference Working Group 11 on Data Security and Privacy Liability, and sits on the *Law360* Cybersecurity

& Privacy Editorial Board. He is a regular speaker and writer on issues related to protecting the rights of the individual against corporate malfeasance.

**John Yanchunis, Morgan & Morgan (Tampa, FL)**

John Yanchunis leads Morgan & Morgan's class action group. Its depth as a trial firm, and its self-funded financial resources, allow it to undertake the largest and most significant cases throughout the country. Mr. Yanchunis—whose career as a trial lawyer began over 41 years ago following the completion of a two-year clerkship with United States District Judge Carl O. Bue, Southern District of Texas (now deceased).

He has been appointed and served in leadership positions in a number of multidistrict proceedings in the area of privacy and data breaches: *In re: Capital One Consumer Data Security Breach Litig.*, No. 1:19-MD-2915-AJT (E.D. Va.) (settlement for $190 million approved for 98 million consumers) (Co-Lead Counsel); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 5:16-MD-02752-LHK (N.D. Cal.) (Lead Counsel) (Court approved $117.5 million common fund settlement for approximately 194 million US residents and 270,000 Israeli citizens); *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.) (Co-Lead Counsel) (final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of over $29 million); *In Re: Equifax, Inc. Customer Data Security Breach Litig.*, 1:17-md-2800-TWT (N.D. Ga.) (member of the Plaintiffs' Steering Committee); *In re: U.S. Office of Personnel Management Data Security Breach Litig.*, 1:15-mc-01394-ABJ (D.D.C.) (member of the Executive Committee) ($60 million common fund ); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) (Executive Committee

member) (final judgment approving a settlement on behalf of a class of approximately 100 million consumers).

In short, given the depth of privacy and data breach experience, the diversity of lawyers, the collaborative nature of the proposed group, and the work already undertaken in these actions, the Drake-Siegel Group is well-suited to lead this litigation.

### III.    _The Drake-Siegel Group's Knowledge of the Applicable Law_.

Proposed Interim Class Counsel are also knowledgeable about the law applicable to the instant claims. As set forth above, the Drake-Siegel Group and the attorneys at their respective law firms have a long track record of successfully litigating large-scale consumer and complex actions, and extensive experience litigating data breach cases in particular. Data breach cases bring their own set of challenges, and litigating them often entails extensive factual discovery, retention of multiple experts, and a background knowledge in the technology of cybersecurity. Recurring issues of Article III standing, class certification, damages, and injunctive relief require counsel that have already learned the lessons or achieved legal rulings that facilitate prosecution.

The Drake-Siegel Group's experience will allow them to skillfully litigate this specific case in the best interests of Plaintiffs and the putative class.

### IV.    _The Drake-Siegel Group Will Commit the Resources Needed to Represent the Class, Coordinate Efforts Among Counsel, and Ensure the Effective and Efficient Resolution of This Litigation._

Rule 23(g)(1)(A)(iv) instructs the Court to consider the resources that counsel will commit to representing the class. The Drake-Siegel Group has the resources necessary to prosecute and finance a case of this magnitude, as they have shown by successfully prosecuting materially similar cases in the past. The Group's law firms are responsible for achieving some of the largest class

action recoveries in some of the most complex, document-intensive, and high-profile data breach class actions. Moreover, while each firm is committed to expending the resources necessary to achieve a favorable result for the class, all counsel are cognizant of the need to control costs, having diligently done so in the other complex litigation they have led.

### V.    *Other Factors Support Appointment of the Drake-Siegel Group*.

A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *see also* Manual § 10.22. Here, members of the Drake-Siegel Group have extensive experience in this District. All have a wealth of experience in successfully prosecuting complex litigation, and this combination of lawyers will best benefit the class.

Additionally, the Drake-Siegel Group already has a proven history of successfully working together in other data breach cases both in this district and across the country. Together, the firms have achieved significant successes on behalf of consumers in a wide range of consumer class actions. The proven history of the Drake-Siegel Group working successfully with each other in this case, in other similar cases, and on important cases in this district weighs heavily in favor of appointing the group, in its entirety, to lead this litigation. *See generally* Duke Standards, Best Practice 4C(iii), at 53 ("The [presiding] judge may take into account whether counsel applying for leadership roles have worked together in other cases, their ability to collaborate in the past divide work, avoid duplication, and manage costs."); *see* Manual § 10.22 (citing attorneys' ability to "work cooperatively with opposing counsel and the court").

Accordingly, although each of the Drake-Siegel Group commits to working with any plaintiff's counsel appointed, adding or subtracting lawyers from the proposed group could well

create the potential for inefficiency. *See In re: Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591, 2015 WL 13679782, at *2 (D. Kan. Feb. 13, 2015) (declining suggestion to pick and choose a slate from competing lead counsel applications in favor of a single slate "that has the distinct advantage of having committed itself in advance to solving this problem together."). In short, if the Drake-Siegel Group is selected, the litigation will be zealously and expeditiously pursued; handled in a collegial and ethical manner; and conducted efficiently and effectively in the best of interests of the proposed class.

## **CONCLUSION**

For the reasons set forth above, the Drake-Siegel Group respectfully requests that the Court grant their application to serve as interim co-lead class counsel. A proposed Order for the Court's consideration is attached hereto as **Exhibit 3**.

Dated: September 13, 2023                  Respectfully Submitted,

*/s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Tel: (703) 424-7572
kkelly@kellyguzzo.com

E. Michelle Drake*
**BERGER MONTAGUE, PC**
1229 Tyler Street NE, Suite 205
Minneapolis, Minnesota 55413
Tel: (612) 594-5933
emdrake@bm.net

Norman E. Siegel*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112

Tel: (816) 714-7100
siegel@stuevesiegel.com

*Pro Hac Vice Admitted*

*Counsel for Plaintiffs and the Proposed Class*